THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
SALVADOR M. VIDAL, Defendant and Appellant.

No. 15846.   Argued March 1, 1955.—Decided March 16, 1955.

*José Guillermo Vivas* for appellant.   *J. B. Fernández Badillo,
Acting Attorney General,* and *Ramón Olivo Nieves, Special
Fiscal of the Supreme Court,* for appellee.

MR. CHIEF JUSTICE SNYDER delivered the opinion of the Court.

Salvador M. Vidal was charged in the Superior Court with
violating the Executive Order of May 21, 1953 of the Gov-
ernor of Puerto Rico in relation with Act No. 183, Laws of
Puerto Rico, 1951, known as the "Puerto Rico Civil Defense
Act of 1951." [1]   The charge was that on November 19, 1953,

---

[1] Section 6(*b*)(1) of Act No. 183 authorizes the Governor to issue
orders and regulations to carry out the purposes of the Act. Sec-
tion 6(*b*)(3) authorizes the Governor "[t]o take any civil defense measure,
including the direction and control of (*a*) black-outs, air-raid drills. . . ."

Section 15 of the Act reads as follows:

"The violation of this Act or of any order, rule, or regulation promul-
gated for the enforcement of the provisions of this Act, including orders
for the subpoenaing of witness, or *duces tecum,* shall constitute a misde-

from 7:55 p.m. to 8:05 p.m., the defendant, as manager of "Casa Kelvinator Vidal" in Ponce, kept the lights on, both inside and outside his commercial establishment, despite the fact that a warning signal for a blackout had been given for that time by the appropriate authorities of the Civil Defense for Puerto Rico. After a trial on the merits, the defendant was found guilty and sentenced to pay a fine of $100 or a day in jail, not exceeding 60 days, for each dollar he fails to pay.

The only assignment of error reads as follows: "The Superior Court committed a serious error of fact and law in finding the defendant appellant guilty of the crime with which he is charged." The defendant relies on his testimony that the firm in question is a corporation known as Vidal & Cía., Inc.; that he is president of the corporation; that the janitor, not the president, has the duty of putting out the lights; and that he gave the janitor instructions to put out the lights when the establishment closed on the night in question. The defendant then argues that ". . . the guilty person would be the person in charge of putting out the lights or at the most the corporation itself as a juridical person, but not the president who does not have to put out the lights. Otherwise we would be nullifying the juridical personality preserved by the Corporation Law." In support of his argument the defendant cites only two quotations from 3 Fletcher, *Cyclopedia of Corporations,* § 1349, pp. 1129–30.

■■■ We do not stop to consider the problem of the criminal liability of the president of a corporation for an offense of this nature in a case where he had no intervention either in the management of the corporation or in the particular conduct in question. Here the testimony shows that

meanor and shall be punished by a fine of not less than one hundred (100) dollars nor more than one thousand (1,000) dollars, or by imprisonment in jail for a term of not less than thirty (30) days nor more than one (1) year, or by both penalties, in the discretion of the court. The District Court [now, Superior Court] of Puerto Rico is hereby granted exclusive original jurisdiction for taking cognizance in any civil or criminal action arising from violations or infractions of the provisions of this Act." (Matter in brackets ours.)

the defendant was the manager in charge of the business and that he personally gave the orders to the janitor as to the lights in question. Under these circumstances the defendant as administrator of the business is personally liable on the criminal charge herein even if, as he testified, he gave the janitor orders to put out the lights when the establishment closed for the day. That is because the crime herein is a "public welfare" offense which does not require criminal intent. See *Morissette* v. *United States*, 342 U. S. 246, 250–60, and footnote 20 at p. 262; *People* v. *Laguna*, 72 P.R.R. 6, and *People* v. *Bou*, 64 P.R.R. 445, involving the adulteration and transportation of milk. *Cf. Gordon* v. *United States*, 203 F. 2d 248, 253, reversed in 347 U. S. 909–10, after judgment was vacated in 345 U. S. 968. Such crimes ". . . depend on no mental element but consist only of forbidden acts or omissions." *Morissette* v *United States*, *supra*, p. 252–3. In such cases ". . . the guilty act alone makes out the crime." *Morissette* v. *United States*, *supra*, p. 256. A prosecution of this type ". . . is based on a now familiar type of legislation whereby penalties serve as effective means of regulation. Such legislation dispenses with the conventional requirement for criminal conduct-awareness of some wrongdoing. In the interest of the larger good it puts the burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a public danger." *United States* v. *Dotterweich*, 320 U. S. 277, 280–1; *Carolene Products Co.* v. *United States*, 140 F. 2d 61 (C. A. 4; 1944); *State* v. *Burnam*, 128 Pac. 218 (Wash., 1912).

In cases of this nature the defendant as administrator of the business is personally guilty even though the act involved was committed without his knowledge or permission. See *People* v. *Sánchez*, 57 P.R.R. 37, involving the adulteration of milk. "Hardship there doubtless may be under a statute which thus penalizes the transaction though consciousness of wrongdoing be totally wanting. Balancing relative hardships . . . [the Legislature] has preferred to place it upon

those who have at least the opportunity of informing themselves of the existence of conditions imposed for the protection of [the public] . . . rather than to throw the hazard on the innocent public who are wholly helpless." *United States* v. *Dotterweich, supra*, pp. 284–5. (Matter in brackets ours.)

In view of the provisions of § 54 of the Code of Criminal Procedure, 1935 ed., the judgment will be modified to provide that the defendant is sentenced to pay a fine of $100 or a day in jail, not exceeding *90* days, for each dollar he fails to pay. As thus modified, the judgment will be affirmed.